Good morning, Your Honor. May it please the Court, Devin Terrio, or for the petitioner, Jose Medina-Lara, from Gibbs-Houston POW, with me on the briefs, Lori Walls, and at counsel table as well. I'd like to reserve about four minutes for rebuttal, if I can. This case is an object lesson in the burdens of proof in the immigration context. It presents an opportunity for the Court to clarify two points of law. Counsel, could I interrupt? Forgive me. I'm just having a little bit of trouble hearing you, and I bet it's tougher for Judge Noonan, so if you could speak into the microphone, that would help. Absolutely. So I was just saying the case presents an opportunity for the Court to clarify two aspects of the precedent. The first is on the reasonable possibility test of Duenas-Alvarez. I do think that Alguilar-Rios controls the disposition of the firearms charge. And the second point is that I believe this case presents an opportunity for the Court to establish clear rules regarding when an abstract of judgment can be used as the sole document providing that critical link between the charging document and the conviction at issue. So my three points are, first, Aguilar-Rios controls. Second, I'm going to talk about the ambiguities in the record of conviction here and why I think that requires the Court to grant the petition. And finally, a brief discussion of the disposition of the appeal. So on Aguilar-Rios, as the Court noted in its order, Aguilar-Rios is a recent case that I do believe controls the firearms charge fairly squarely. The only real response that the government's been able to offer is that it involves a different section of the firearms enhancement. It's 12021, and our case involves 12022. But the fact of the matter is, Duenas-Alvarez, the key analysis is what is the legal scope of the statute. And in this case, we have plenty of California cases applying the same definitional phrase to antique firearms, heirloom firearms, et cetera. So I don't think there's any question that the firearms charge is not sustainable and that Mr. Medina-Lara should win on that one. The second point is about, really, the burden of proof. And I think, you know, the Supreme Court, in would-be BINS, everyone knows, set out clear, convincing, and unequivocal as the standard of proof for the severe burden of deportation. The only reviewable documents in this case are the complaints and the abstract of judgment. And that, in and of itself, distinguishes it from many of the government's cases where there was also a plea colloquy, also minutes which were admissible. There are minutes in this case, but as we explained in our brief, they're not referable. You can't refer to them in the record of conviction because they're not certified by DHS or signed by the court. So they're not reviewable under the modified categorical approach. Over the course of 10 master calendar hearings over an eight-month period before a San Francisco immigration judge in California, the immigration judge begged the department to provide more evidence to support its case, referring at the first master calendar hearing, saying it's, quote, it is not clear, close quote, what Mr. Medina-Lara has been convicted of. And that is the crux of the case. Even months in, in January, the court's still confused. He says there's a disconnect between the charging document that was submitted and the abstract because the counts don't correspond. And ICE even agrees. That's at 375 of the record. ICE says we need to get the superseding indictment. And then fast forward to May, and suddenly the ROC is clear. No new documents have been submitted. And the judge says I'm going to rule against you and places the burden on Mr. Medina to go and get the plea colloquy. And that was my question. No other documents have been submitted at that point? Not that I could tell. In my preparation last week, I looked very carefully through the record. And unlike the judges in Seattle, the judge in San Francisco does not mark admissions into the record on the date that they're received. So it's a little bit unclear. But I think certainly by May, I mean, this is the second to last master calendar hearing, everything's been admitted. I think at the very first hearing, it may be that some documents had not been submitted. But certainly by February, I believe that's when all of the documents were in the record and there were still several masters or the judges asking for more. Let's say we agree with your argument. This is obviously a hypothetical question. What do we do with the 11377 conviction? Well, I mean, if we win on the 11351 conviction, I think we win on both. Wins. Yes, Your Honor. Thank you. If Mr. Medina prevails on the 11351 conviction, I think both counts rise and fall on the same document. So there's no document linking the identity of the controlled substance and this Court's decisions have held that 11377 is overbroad. So without that critical link, all you have is an ambiguous abstract of judgment and that's not sufficient. You can't rule on something that's not before us, right? Well, I mean, I think that if the legal issue is completely controlled and keep in mind the Board, on the first time up to the Court, the Board did rule on the controlled substance ground of removal. So the Board issued a decision on the controlled substance ground the first time it was before the Court and then it was remanded back for a decision on the Ag Fell issue. So the Board has had three opportunities to address this issue and I don't think that there's any necessity, it's not necessary to do a remand in this case for that reason. But is your position it's not necessary to do a remand because you think it would be futile and they had lots of opportunities to come up with additional documentation or is it the legal issue, which is you think they have reached it? Well, I think they have reached it. In the first decision they reached the issue of controlled substance. But Judge Hawkins' point is that this isn't really before us now. The other charge isn't really before us this time. Well, I mean, I think that both decisions are in the record. This is the flip side of the fact from the government's point of view that we can't affirm for any basis in the record as we ordinarily could in a civil proceeding. For example, the law in the immigration context is pretty clear. If it's not before us we can't rule on it. So if we can't rule on it, what do we do with it? Well, I mean, I think that there's two cases that I would point out on this point because this was actually my third point was the disposition of the appeal. And that's Hernandez-Cruz v. Holder, 651 F. 3rd, 1094. Wait a minute, 651 F. 3rd, 1094. It may not be, and I can certainly do a 28-J on it. It came up in my preparation on Friday. And the second case is about Hernandez. It's Vidal, which is cited in the brief, 473 F. 3rd, 1072. On the new one, leave the clerk with the citation and provide a copy to your opposing counsel. I'd be happy to do that, Judge Hawkins. So, you know, I think that in both those cases this court declined to do a Ventura-style remand. And I think, you know, Ventura really deals with this situation where the board's decision is unsupportable on the ground that they've decided the case. And there's some additional facts, fact-finding or legal conclusions that are particularly suited for the board to do, such as in the issue of relocation, which is the issue that Ventura was about. And this is not that situation. This we have a legal issue that is a purely legal question. Does this abstract of judgment, combined with these two complaints, establish a basis for removability? That's a question that the court can and should reach. My client's been detained now for five years, which is twice the period of his criminal detention. But, counsel, it sort of presupposes, I think you're really answering the other question that I raised earlier. In other words, is it a legal question or is it a factual question? The factual question being, of course, that the government wouldn't have been limited to just looking at the abstract. There are other Shepard-eligible documents, Shepard-compliant documents that they could have pointed to. So are you really asking us to not remand because you think it would be futile? They were given ten opportunities and they didn't come up with something? Is that what you're saying? Well, I mean, I think at some point when a case has gone on at the first stage for eight months, with the judge again repeatedly asking for these documents, at some point the government is the one that's always saying, these cases have to come to a close. And in this case, you know, I think that what's good for the goose is good for the game. So the answer to my question is yes. I believe it is. Time's up. They can't, they don't get another bite. I believe it is futile, Your Honor. Okay. And I also believe as a matter of law under Hernandez-Cruz and Ruiz-Vidal that when it's a legal issue and all the documents are already in the record, we're not talking about doing additional discovery. See, I don't know if all the documents are in the record. That's the point. Well, there is that letter from the, that handy letter from the California clerk that says, we don't do transcripts anymore because we don't have any money. And that letter is in the record. So, you know, I'm not sure that there are any additional documents. All right. I think you've answered my question. I didn't mean to belabor the point, but it does seem to me to be a two-part argument, so I appreciate that. Thank you, Judge. The last thing I'd just like to say before I reserve the balance would just be that, you know, if the court is inclined to grant relief in this case, we would respectfully request that the court issue a short-form order promptly directing the release of Mr. Medina as Judge Hawkins did on a panel that was at Hawaii in Regassa v. Holder this past February. Not so fast. Judge Noonan, do you have questions for Defense Counsel? I do. I think that was a no. All right. No.  Thank you. Thank you, Counsel. Thank you. May it please the Court, Brendan Hogan for the government. In this case, the record of conviction is reliable. If you were to look at page 422 of the record, that would be the complaint for the conviction under Section 11351. And in the top right-hand corner, it says filed in court on April 20, 2005. If you then compare that date with the abstract of judgment, which is at page 428, it lists that as the same date as the conviction for 11351. The complaint is very clear that it was for possession for sale of cocaine. Further, the complaint is reliable because at pages 225 to 226, it seems that Petitioner tried to get his conviction vacated in the Superior Court in California, and he specifically relied on that complaint. He cited the date it was filed in court. He specifically enumerated the count that he pled guilty to, and he said it was, in fact, for cocaine. Why would the government, in response to apparently repeated requests by immigration judges to produce additional information about this particular conviction, tell one or more IJs, yes, we need to get additional information and we will, then not produce any of that information and at the end of the game say nothing more is needed? Well, regarding the plea colloquy, Your Honor, it does seem that initially the immigration judge did want the plea colloquy. But, again, that goes to what was discussed earlier. It's unclear at that point what documents the immigration judge actually had before him. And furthermore – But I thought it was pretty clear when I looked at the record, and I'll sure go back and look again, Counsel, but I just want to invite you to correct me if I'm wrong. It seems that there is a statement in the record from the IJ that there was a discrepancy between the complaint and the record of conviction. And the concern was, I think, that California allows oral amendments, and there was even a statement to the effect that it looked to him like, or her, forgive me, that there may have been an amendment. So what do we do with that? And, again, that's why the certified in court date on the complaint and the date of conviction on the abstract are so crucial, Your Honor, because it establishes that it was, in fact, the complaint that was relied on when the positioner pled guilty in this case. Well, a complaint was relied on, but California allows oral amendments, right? Would we necessarily see that? The IJ didn't think so. It's unclear, Your Honor. The IJ thought there was a discrepancy and wasn't willing to go forward on those two documents, right? Initially, but eventually in the underlying decision, and, again, in the decision after a sui sponte reopening, in this case, the agency did, in fact, find these two documents were reliable. Okay. So am I mistaken, and maybe you answered this, but by the time the IJ made the decision to go forward, did the IJ have anything new or different? No, Your Honor. It was the abstract of judgment and the criminal complaint. The stuff that was already there. Yes, Your Honor. Which you think the government thinks is complete. Yes, Your Honor. Okay. So your answer has to be, I think, that the IJ's comment, the IJ was wrong when the IJ made the comments that there was an apparent discrepancy. Yes, Your Honor. It originally confused about what was going on in the petitioner's criminal case, but eventually came to a reasoned conclusion that these two documents were sufficient. What's your position on IVLA and the firearms enhancement? Well, first, as we pointed out in our brief, the panel need not reach the firearms conviction because the drug trafficking offense, in this case, is dispositive. If you do wish to discuss it, again, as we cited in our brief, Montcrief and also this Court's decision require to show a realistic possibility that a defendant could be convicted for using antique firearms. Under the specific section of this case, the Sentencing Enhancement 12022C, there's never been a case in California, at least either party can find, where a defendant has been prosecuted for using an antique firearm in the commission of 11351. So, therefore, there's no realistic possibility of prosecution for using an antique firearm in this case. Okay. I take it that in the government's preparation, your preparation, you thought IVLA didn't apply to these proceedings? I believe the government followed 28-J for that case, Your Honor. Okay. All right. Are there any further questions? I don't have any. Or questions from Judge Noonan? No, thanks. Thank you. Thank you, Counsel. I think Counsel's argument actually proves too much because we're, again, having to speculate. And, you know, the fact that the government, the trial attorney before the IJ, not only did he agree that they needed to get the superseding indictment, but later submitted this abstract of judgment with these lines drawn on it to try to explain to the Court what these counts could mean, the count 3A, count 1B, what does this mean? We shouldn't be having this discussion. I mean, the whole point of Moncrief and Descamps is that when you're talking about exile, and that's what's at issue here for my client, when you're talking about exile, an exacting standard of proof is required. The Ninth Circuit cases on abstracts that are recited by my opponent are all cases where the abstract is clear and unambiguous. And there's several layers of ambiguity here, and that's why the Court has to grant the petition, in my view. The other thing, you know, the government's reliance on Mr. Medina's statements in his post-conviction motion, clearly under this Court's precedent, the whole point of the modified categorical approach, you have to look at the conviction document. So it doesn't matter if Mr. Medina said in court, oh, yeah, I possessed XYZ substance. It's not admissible in the modified categorical analysis. Well, does that mean you think that would not be a Shepard-compliant document? That's correct. I mean, anything in, once you start the immigration proceedings, nothing in that proceeding can be Shepard-compliant for establishing what the facts of the conviction are. The whole point of the modified categorical approach is to avoid relitigating these cases. Do you really mean nothing? If the defendant made an admission or stipulation about an underlying conviction, you think an IJ couldn't rely on that? Let me rephrase that. If the petitioner in a removal case concedes removability and admits the conviction and concedes removability, that would certainly be sufficient. Well, I'm just focusing on the admit the conviction part. If the defendant, in this type of a case, admitted the nature of the underlying conviction, wouldn't that be Shepard-compliant? I would need to ask a qualifying question on that because it would depend on whether he admitted the conviction was for this particular substance or just the fact of a conviction. Certainly, you know. Oh, no, no. I meant that the conviction that would render him removable. And you can make that any kind of conviction you want. Right. So I think it's clear that that kind of testimony would not be reviewable under the modified categorical analysis. Why not? Because you have to focus on the documents that are contemporaneous before the criminal court. So in front of the IJ, if a defendant said, I admit that my underlying conviction was for sale of methamphetamine, you think that could not be relied upon? I believe that's correct under the case law, Your Honor. Do you have an authority for that? Not off the top of my head, but I'd be happy to provide one. Thank you. Yeah. I'll appreciate receiving it. And just one final point, unless the court has further questions. On Friday, again, when I was preparing for this argument, I did find a case out of California which I was just writing down, People v. Scheller, which is 136 Cal App 4th, 1143, California Court of Appeals, 2006. I will provide it to the court and to counsel. It's not directly on point, but it involves an heirloom firearm. So it's a firearm that's described as an heirloom. The court actually vacates the conviction and remands for a new trial on a different issue, so it doesn't reach the issue of the heirloom firearm. But the fact that it was referenced as an heirloom and it is under the same statute, 12022. I don't believe you need to go there. I think the definitional statute is what controls here. But in the event that the court believes you need a case referencing this specific enhancement, that would be one such case, which I will sit down and provide to counsel in the court. Thank you. Are there other questions, Judge Noonan? Thank you, no. All right, nothing further, then. We'll take that case under submission. I appreciate the argument of counsel and all counsel today very much. With that, we'll stand in recess for the day and be off record.
judges: NOONAN, HAWKINS, CHRISTEN